IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SHARON K. FRONCHECK,** | ) | |
| Plaintiff, | ) ) ) | |
| V. | ) ) | Civil No. **08-50-DRH-CJP** |
| **MICHAEL J. ASTRUE**[1], **Commissioner of Social Security,** | ) ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This report and recommendation is respectfully submitted to Chief United States District Judge David R. Herndon pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

Pursuant to 42 U.S.C. § 405(g), plaintiff Sharon K. Froncheck, represented by appointed counsel, is before the Court seeking review of the final decision of the Social Security Administration denying her Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423, or even a Period of Disability (POD) pursuant to 42 U.S.C. § 416(i). **(Doc. 1).** In addition to submitting the administrative record **(Doc. 15 (hereinafter "R."))**, plaintiff and defendant have fully briefed their positions. **(Docs. 29, 23 and 31).**

Plaintiff Froncheck's physical and psychiatric ailments are not in dispute, per se. Rather, this appeal centers around whether plaintiff engaged in any substantial gainful activity during the relevant time period, thereby rendering her ineligible for benefits.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is, therefore, automatically substituted as the defendant in this civil action, and no further action is necessary to continue this case.

## Synopsis of the Relevant Procedural History

In November 2002, plaintiff Sharon K. Froncheck applied for DIB, alleging the onset of disability as of January 1, 1998. **(R. 95-97).** She subsequently amended her onset date to July 3, 2000. **(R. 552).** At all relevant times, plaintiff was self-employed as the owner of Shari's Place, a bar in Collinsville, Illinois. **(R. 182).** At the time of the decision to deny her benefits, plaintiff was 52 years old, and she claimed disability due to a history of "brain damage," a stroke, TIA's, chronic migraines, seizures, post-traumatic stress disorder, stress, depression and hypertension. **(R. 555, 560-561, 563, 569-572, 576-577, 589-591).**

After a hearing in 2004, plaintiff was denied benefits, but that decision was vacated on appeal and the matter was remanded. **(R. 61-62).** Administrative Law Judge ("ALJ") Francis J. Eyerman conducted a second evidentiary hearing in November 2006. **(R. 546-627).** In a written decision dated January 24, 2007, ALJ Eyerman denied plaintiff benefits. **(R. 21-27).** The ALJ concluded that from the alleged date of disability, July 3, 2000, through the date plaintiff was last insured, March 31, 2001, she continuously engaged in substantial gainful activity in self-employment. Applying the test set forth at 20 C.F.R. § 404.1575(a)(2)(iii), the ALJ found that plaintiff's management activities were worth more than the prescribed earnings ceiling that ordinarily evinces substantial gainful activity. Therefore, in accordance with 20 C.F.R. § § 404.1520(a)(4)(i) and 404.1520(b), plaintiff was found not disabled, regardless of her medical condition, or her age, education and work experience.

Plaintiff's request for reconsideration was denied by the Social Security Administration Appeals Council **(R. 7-10)**, thereby making ALJ Eyerman's decision the final appealable agency decision. **42 C.F.R. § 404.981.**

## The Standard of Review

To be entitled to disability insurance benefits the claimant must establish that he is "disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." **42 U.S.C. § 423(d)(1)(A).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. ***See Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992);** *see also* **20 C.F.R. § 404.1520(b-f).**

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).** Thus, the Court must determine not whether plaintiff is in fact disabled, but whether the ALJ's findings were supported by substantial evidence; and, of course, whether any errors of law were made. *See* ***Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).** The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richardson v. Perales*,**

3

**402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence" the entire administrative record is taken into consideration, but this Court *does not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).** Furthermore, an ALJ may not disregard evidence when there is no contradictory evidence. ***Sample v. Shalala*, 999 F.2d 1138, 1143 (7th Cir. 1993).**

A negative answer at any point in the five step analytical process, other than at the third step, stops the inquiry and leads to a determination that the claimant is not disabled. ***Garfield v. Schweiker*, 732 F.2d 605, 607 fn. 2 (7th Cir. 1984).** If a claimant has satisfied steps one and two, he or she will automatically be found disabled if he or she suffers from a listed impairment (step three). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at step four to show that the claimant can perform some other job. ***Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).**

### Relevant Evidence

During the November 2006 evidentiary hearing, plaintiff Froncheck testified that the alcohol distributors generally knew what products were needed, the cleaning crew had a routine, and her best friend acted as the manager of Shari's Place; therefore, she only spent about three hours, three days per week at the bar. **(R. 564-565 and 568).** Plaintiff indicated the bar employed three people, and she wrote the weekly paychecks and did all of the hiring and firing. **(R. 581 and585; *see also* R. 641 (August 2004 hearing)).** In 2000, the business paid out $17,588.00 in wages; in 2001, the amount was $17, 842.00. **(R. 117 and 122).** Plaintiff tallied the

4

register receipts herself, ordered the supplies, wrote the checks for the business, and generally did the banking, although she otherwise utilized a bookkeeper and relied on the assistance of the manager. **(R. 582-583, 602-603 and 608).** Plaintiff also testified that she personally tended to the gambling machines in the bar. **(R. 599).** Only plaintiff and the manager could access the safe in the bar. **(R. 602-603).**

Plaintiff's individual income tax returns for 2000 and 2001 show no wages. **(R.115 and 120).** However, plaintiff testified that after paying her employees, the bills and the government, she drew a salary of $200.00 per month. **(R. 564-565).** The business itself reported a loss of $3,838.00 in 2000, and a loss of $1,330.00 in 2001. **(R. 117 and 122).** When asked about the revenues from gambling machines in the bar, which were not itemized in the Profit/Loss tax forms, plaintiff would only reply that she had paid all of the appropriate taxes and the gambling machines were legally in the bar. **(R. 596-600).**

The judgment order issued in 2002 in plaintiff's divorce case in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, reflects that plaintiff refused to answer questions regarding the proceeds from the gambling machines. **(R. 43).** Judge Maddox concluded that it was reasonable to infer that such testimony would be unfavorable to plaintiff. **(R. 43).** Judge Maddox further questioned why plaintiff would want to retain the bar if she was only making $200.00 per month, and the judge found that the $200.00 was "not a reasonable rate of pay for [plaintiff's] time let alone any reasonable profit." **(R. 43).** Consequently the Circuit Court ordered the bar to be sold. **(R. 44).**

### ALJ Eyerman's Decision

When a claimant is self-employed, the claimant's activities (or activities that were stopped or reduced due to impairment) and their value to the business are considered, not income alone. **20 C.F.R. § 404.1575(a)(2).** Section 404.1575(a)(2) includes three possible tests for evaluating work activity. Utilizing "Test Three,[2]" ALJ Eyerman concluded plaintiff Froncheck had engaged in "substantial gainful activity," because the value of her managerial activities to the business, when compared to the salary an owner would pay an employee to do the work, was more than the prescribed threshold amounts of $700.00 per month for 2000, and $740.00 per month for 2001. **(R. 23-26).** In pertinent part, the ALJ stated:

> The tavern would not have operated without the claimant. She made all essential management decisions and supervised the tavern by her personal presence about 9 hours per week, plus telephone calls to check on the business, and management review of the business records and receipts (whether done at her home office, during a hospitalization, or at the tavern). The claimant hired and fired, and she directed the operation of the business, including critical decisions such as setting the hours of operation fo the business. She closed the tavern early some nights if there were too few customers, to save wages and utilities.

**(R. 26).**

Relative to Step Four in the analytical framework, ALJ Eyerman also made a finding of

---

[2] (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

**20 C.F.R. § 404.1575(a)(2)(iii).** The threshold amount for the year 2000 is $700.00 per month. **20 C.F.R. § 404.1574(b)(2), Table 1, July 1999-December 2000.** The relevant amount for 2001 is $740.00 per month. **20 C.F.R. § 404.1574(b)(2)(ii).**

6

fact that plaintiff was not under a disability at any time from the alleged onset date, July 3, 2000, through March 31, 2001, the date she was last insured. **(R. 27).** The ALJ noted that, "if the evaluation proceeded to later steps of the sequential evaluation process," plaintiff would be found capable of performing her past work in customer service and as a coupon redemption audit clerk.

## Analysis

"If you are substantially gainfully employed, that is the end of your claim, even if you have compelling medical evidence that you are really disabled." ***Jones v. Shalala*, 21 F.3d 191, 192 (7th Cir. 1994).** Consequently, the Court need only ensure that there is substantial evidence in the record to support the ALJ's analysis at step one in the five-step analytical process, and that no error of law were committed.

As a general matter, "substantial work activity" involves doing significant physical or mental activities, even on a part-time basis. **20 C.F.R. § 404.1572(a).** "Gainful work activity" is the type of work usually done for pay or profit, even if a profit is not realized. **20 C.F.R. § 404.1572(b).** ALJ Eyerman applied the following specific test to determine whether plaintiff Froncheck was engaged in substantial gainful activity during the relevant insured period:

> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, *is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.*

**20 C.F.R. § 404.1575(a)(2)(iii) (emphasis added).** The threshold amount for the year 2000 is $700.00 per month. **20 C.F.R. § 404.1574(b)(2), Table 1, July 1999-December 2000.** The

7

relevant amount for 2001 is $740.00 per month. **20 C.F.R. § 404.1574(b)(2)(ii).**

As ALJ Eyerman noted, plaintiff did apparently consciously minimize her importance to the business. **(R. 24).** Plaintiff testified that her best friend managed the bar on a daily basis, and her distributor and cleaning crew did not really need supervision, but she also testified about her many supervisory activities. Plaintiff testified that her best friend "helped" her run the bar **(R. 568)**, but plaintiff clearly continued to exercise dominion over the business. She tallied the receipts herself and dealt with the bookkeeper. **(R. 582-583).** On days she was not at the bar, the receipts were brought to her house. **(R. 583-584).** Plaintiff personally wrote the weekly payroll checks and handles the business's checking account. **(R. 585 and 608).** Plaintiff was also the only person who would monitor the gambling machines. **(R. 599).** Plaintiff always maintained contact with the bar, calling on a daily basis. **(R. 587).** Thus, the record firmly supports the conclusion that plaintiff performed substantial work activity.

Plaintiff testified that, after paying expenses, her employees' wages and taxes, she only had $200.00 left to pay herself. Plaintiff never testified that her services were worth only $200.00 per month. Plaintiff, citing Social Security Ruling (SSR) 83-84 (and three non-controlling district court rulings from outside the Seventh Circuit), argues that doubt as to the comparability or the worth of plaintiff's services necessitated that evidence be introduced into the record from authoritative sources in the community. SSR-83-84 states in pertinent part:

> With respect to tests two and three, the degree to which evidence of comparability or worth of services should contain data supplied by outside authorities (e.g., county agents, etc.) will depend on the factual situation. In many instances, familiarity with local conditions will make it unnecessary to document the file in great detail. For example, it may be evident in a poor farming area that management services on a small farm yielding a less-than-subsistence income

8

would not be comparable to the full range of physical and mental activities performed by an able-bodied farm operator, nor would the services be clearly worth more than the amount shown for the particular calendar year in the SGA Earnings Guidelines. On the other hand, where there is any doubt as to the comparability or worth of services, it will be necessary to obtain evidence in appropriate detail, supplemented as required by opinions from authoritative sources in the community.

**SSR 83-84, 1983 WL 31256 at *10.** Plaintiff's situation does not require expansion of the record to include additional evidence regarding the comparability or the worth of plaintiff's services. The math is so clear; there is no reasonable doubt as to the comparability or worth of plaintiff's services. Plaintiff offers only the circular argument that the lack of additional evidence in the record raises doubt.

ALJ Eyerman extrapolated that, based just on the nine hours per week plaintiff testified she was physically present at the bar, plaintiff's services would have to be worth $17.96 per hour in 2000, and $18.99 per hour in 2001 to surpass the threshold earnings amounts. **(R. 26).** The ALJ concluded plaintiff could have earned more than $700.00/$740.00 performing those same services on a part-time basis, and that those services were worth more than that amount to the business. **(R. 26).** Judge Maddox had a similar take on the valuation of plaintiff's services, concluding that the $200.00 was "not a reasonable rate of pay for [plaintiff's] time let alone any reasonable profit." **(R. 43).** This Court joins the chorus.[3] Plaintiff's duties as a supervisory manager, and her handling of the day-to-day financial matters [4], are reasonably worth more than $17.96/$18.99 per hour. Therefore, there is substantial evidence to support the ALJ's conclusion

---

[3]"Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." ***Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).**

[4]In 2000, Shari's Place had gross receipts of $75,850.00; in 2001, gross receipts were $83, 833.00. **(R. 117 and 122).**

9

that plaintiff performed substantial gainful activity worth more than the prescribed threshold amounts in 2000 and 2001. In accordance with Sections 404.1571, 1575(a)(2)(iii) and *Jones v. Shalala*, 21 F.3d 191, 192 (7th Cir. 1994), plaintiff Froncheck cannot be awarded disability benefits, regardless of her medical situation.

Plaintiff offers a final argument regarding the ALJ's "finding" that, "if the evaluation proceeded to later steps of the sequential evaluation process," plaintiff would be found capable of performing her past work in customer service and as a coupon redemption audit clerk. Plaintiff correctly observes that no findings were made as to plaintiff's residual functional capacity, as required by 20 C.F.R. § 404.1520. The necessary analysis is clearly missing; nevertheless, this point of error is not dispositive of plaintiff's appeal. "If you are substantially gainfully employed, that is the end of your claim. . . ." **Jones v. Shalala, 21 F.3d 191, 192 (7th Cir. 1994).** Although the ALJ's comments regarding plaintiff's ability to perform her past work were included within the rubric of his "findings," they appear to have been merely an ill-advised, gratuitous comment.

## Recommendation

For the aforestated reasons, it is the recommendation of this Court that the final decision of the Social Security Administration denying plaintiff Sharon K. Froncheck Disability Insurance Benefits be affirmed in all respects.

**DATED: December 16, 2008**

                                                  **s/ Clifford J. Proud**
                                                  **CLIFFORD J. PROUD**
                                                  **U. S. MAGISTRATE JUDGE**

## Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the parties shall file any objections to this report and recommendation on or before January 8, 2009.